**UNITED STATES DISTRICT COURT**            **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ROBOGISTICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:23-CV-408 |
| | § | |
| DEMATIC CORP., JAMES ULINSKI, and | § | |
| DEAN PRIEBE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Plaintiff Robogistics, LLC's ("Robogistics") Motion to Remand Removed Action (#10). Defendants Dematic Corp. ("Dematic"), James Ulinski ("Ulinski"), and Dean Priebe ("Priebe") (collectively, "Defendants") filed a response in opposition (#12), Robogistics filed a reply (#19), and Defendants filed a sur-reply (#24). Having considered the motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be granted.

I.      <u>Background</u>

According to the petition, Robogistics manufactures complete material handling systems and custom equipment, including industrial robots and other automated equipment and machines. In April 2019, Dematic sent Robogistics a Request for Proposal regarding the provision of a robotic

component of an automated packing process Dematic was designing for one of its customers. Robogistics asserts that, after months of discussions and meetings, an agreement was reached on January 15, 2020, which was subsequently "placed on hold" and ultimately canceled.[1]

Thereafter, on September 17, 2020, Dematic sent Robogistics a second Request for Proposal, which "included changes to the Project scope and terms." After further negotiations, Dematic accepted Robogistics's updated proposal and placed a revised purchase order on February 10, 2021. Robogistics contends that pursuant to the parties' agreement, Robogistics was to provide a Robotic Gantry System ("Gantry System") that would interface with a Warehouse Control System ("WCS"), a computer program and software designed and built by Dematic. The WCS would control the Gantry System in order to assemble orders for Dematic's customer. Robogistics alleges that "Dematic knew that it could not perform its responsibilities when it agreed to Robogistics's terms and conditions in February 2021."

Robogistics provides two examples of Dematic's purported inability to fulfill its obligations under the parties' agreement. First, Robogistics alleges that Dematic knew that it could not provide the requisite hardware for temperature control. Second, according to Robogistics, Dematic knew that it would not be able to develop a WCS that was compatible with Robogistics's Gantry System. Ultimately, after numerous issues arose, Dematic terminated the project in September 2023.

Robogistics filed suit in the 172nd Judicial District Court of Jefferson County, Texas, asserting causes of action against Dematic for breach of contract, conversion, trade secret

---

[1] As discussed below, Defendants contend that the parties entered into a Master Subcontract Agreement ("MSA") on September 13, 2019, and attached a copy of the MSA to their response to Robogistics's Motion to Remand (#12-1).

misappropriation, common law misappropriation, and violations of the Texas Theft Liability Act. Robogistics also lodged claims of fraud, fraudulent concealment, and fraudulent inducement against Dematic, as well as two employees of Dematic—Ulinski and Priebe.  Dematic contends that during the relevant time period, Ulinski was a Robotics Engineer, whereas Robogistics describes Priebe as a "director over the project."

Defendants removed the case to this court under 28 U.S.C. § 1441, claiming that removal was proper because the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists.  The parties agree that Robogistics is a citizen of the State of Texas, Dematic is a citizen of the States of Delaware and Georgia, Priebe is a citizen of the State of New Hampshire, and Ulinski is a citizen of the State of Texas, thus making him the lone non-diverse defendant. Defendants, however, claim that Ulinski is improperly joined and, consequently, his citizenship does not prevent removal under § 1441.[2]  Robogistics filed the pending motion to remand the case to state court, contending that Ulinski was properly joined, and, therefore, because complete diversity does not exist among the parties, federal jurisdiction is lacking.

II.    Motion to Remand

    A.    Removal Jurisdiction

"Federal courts are courts of limited jurisdiction."  *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ___, 139 S. Ct. 1743, 1746 (2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *accord Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Cleartrac, L.L.C.*

---

[2] Defendants contend that Priebe is also improperly joined, but as the parties concede, Ulinski is the only defendant who is a citizen of Texas, and thus, only his status potentially affects the court's jurisdiction of this matter under 28 U.S.C. §§ 1332, 1441(b).  Accordingly, the court's analysis focuses on whether Ulinski was properly joined.

*v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 364 (5th Cir. 2022); *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 816 (5th Cir. 2021); *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019).   "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen*, 511 U.S. at 377; *accord Gonzalez*, 926 F.3d at 188. The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Gonzalez*, 926 F.3d at 188 (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)); *accord Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017).  In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 231-32 (2007); *Atkins v. CB&I, L.L.C.*, 991 F.3d 667, 669 n.1 (5th Cir. 2021); *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020); *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018).

When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Barker v. Hercules Offshore Inc.*, 713 F.3d 208, 212 (5th Cir. 2013) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)); *accord Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 611 (5th Cir. 2018); *see* 13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3602.1 (3d ed. 2013).  "This extends not only to demonstrating a jurisdictional basis for removal, but also necessary

compliance with the requirements of the removal statute." *Leboeuf v. Hatle*, No. 20-105, 2020 WL 1074952, at *1 (E.D. La. Mar. 6, 2020) (citing *Roth v. Kiewit Offshore Servs., Ltd.*, 625 F. Supp. 2d 376, 382 (S.D. Tex. 2008)); *accord Hernandez v. State Farm Lloyds*, No. DR-16-CV-164-AM/CW, 2017 WL 8131570, at *2 (W.D. Tex. Sept. 19, 2017); *Fort Worth & W. R.R. Co. v. Stevenson*, No. 3:15-CV-0906-B, 2015 WL 3867906, at *1 (N.D. Tex. June 22, 2015). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)); *see Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 395 (5th Cir. 2009).

"The removal statute ties the propriety of removal to the original jurisdiction of the federal district courts." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *see* 28 U.S.C. § 1441(a); *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 307 (5th Cir. 2021); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019); *Allen*, 907 F.3d at 183. Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any doubt resolved against removal and in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024); *Valencia v. Allstate Tex. Lloyd's*, 976 F.3d 593, 595 (5th Cir. 2020); *Settlement Funding, L.L.C.*, 851 F.3d at 536; *Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014). In short, any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (quoting *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)); *accord Allen*, 907 F.3d at 183; *Afr. Methodist Episcopal Church*, 756 F.3d at 793.

B.   <u>Diversity Jurisdiction</u>

Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. §§ 1331, 1332; *Home Depot U.S.A., Inc.*, 139 S. Ct. at 1746; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  In order to determine whether jurisdiction is present in a removed action, the claims set forth in the state court petition are considered as of the date of filing and the date of removal.  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004); *In re N&W Marine Towing, L.L.C.*, 90 F.4th 724, 731 (5th Cir. 2024) (quoting *Manguno*, 276 F.3d at 723); *Moss v. Princip*, 913 F.3d 508, 514 (5th Cir. 2019); *Ashford v. Aeroframe Servs., LLC*, 907 F.3d 385, 386-87 (5th Cir. 2018).  In removed cases where, as here, there is no suggestion that a federal question is involved, subject matter jurisdiction exists only if there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332; *Lincoln Prop. Co.*, 546 U.S. at 89; *Exxon Mobil Corp.*, 545 U.S. at 552; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Complete diversity requires that no plaintiff be a citizen of the same state as any defendant.  *Exxon Mobil Corp.*, 545 U.S. at 552; *Lewis*, 519 U.S. at 68; *Moss*, 913 F.3d at 514; *Vaillancourt v. PNC Bank Nat'l Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014).  In cases removed from state court, "diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court."  *Ashford*, 907 F.3d at 386-87 (quoting *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir.

6

1996)); *see Grupo Dataflux*, 541 U.S. at 570-71; *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009). Furthermore, removal is appropriate only if none of the parties properly joined and served as a defendant is a citizen of the state in which the action was brought. *Pace*, 93 F.4th at 889 (quoting *Lincoln Prop. Co.*, 546 U.S. at 84); *Afr. Methodist Episcopal Church*, 756 F.3d at 793; *In re 1994 Exxon Chem. Fire*, 558 F.3d at 391.

C.     Improper Joinder

In the case at bar, to establish the existence of diversity jurisdiction, Defendants must show that Ulinski was improperly joined as a defendant to this action. *See Miciotto v. Hobby Lobby Stores, Inc.*, No. 21-30456, 2022 WL 3210686, at *2 (5th Cir. Aug. 9, 2022) (citing *Hicks v. Martinrea Auto. Structures (USA), Inc.*, 12 F.4th 511, 514-15 (5th Cir. 2021)); *Afr. Methodist Episcopal Church*, 756 F.3d at 793; *Mumfrey*, 719 F.3d at 401; *In re 1994 Exxon Chem. Fire*, 558 F.3d at 384-85. In determining whether a defendant is improperly joined, the "focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1045 (5th Cir. 2021) (quoting *Hicks*, 12 F.4th at 515); *accord Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016); *McDonal v. Abbott Lab'ys*, 408 F.3d 177, 183-84 (5th Cir. 2005). The removing party bears the heavy burden of proving that a non-diverse defendant has been fraudulently joined to defeat diversity, either by showing (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Pace*, 93 F.4th at 889 (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)); *D & J Invs. of Cenla, L.L.C. v. Baker Hughes a G E Co., L.L.C.*, 52 F.4th 187, 195 (5th Cir. 2022); *Ticer*, 20 F.4th at 1045; *Waste Mgmt. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th

7

Cir. 2020).  There is no difference between the terms "improper joinder" and "fraudulent joinder" in the context of removal jurisdiction.  *See Hoyt*, 927 F.3d at 303; *Smallwood*, 385 F.3d at 571 n.1.

Where the defendant maintains that federal jurisdiction is proper, the court must evaluate all the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff, and then examine relevant state law and resolve all uncertainties in favor of the nonremoving party.  *D & J Invs. of Cenla, L.L.C.*, 52 F.4th at 195; *see Pace*, 93 F.4th at 889; *Afr. Methodist Episcopal Church*, 756 F.3d at 793; *Barker*, 713 F.3d at 212.  Furthermore, the "court must normally assume all the facts as set forth by the plaintiff to be true."  *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983)); *accord D & J Invs. of Cenla, L.L.C.*, 52 F.4th at 195 (holding that when evaluating whether a defendant is properly joined, the court "resolve[s] any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in [the plaintiff's] favor" (quoting *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007))); *Cuevas v. BAC Home Loan Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

While a court, when considering allegations of improper joinder, should refrain from pre-trying the case or conducting an evidentiary hearing, it may utilize a summary judgment-type procedure "that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a nondiverse defendant."  *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311 (5th Cir. 2002); *accord Smith*

*v. Bank of Am. Corp.*, 605 F. App'x 311, 313-14 (5th Cir. 2015).  "Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."  *Martinez v. Pfizer Inc.*, 388 F. Supp. 3d 748, 765 (W.D. Tex. 2019) (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999)); *accord Cavallini*, 44 F.3d at 263.

A district court should ordinarily resolve claims of improper joinder by conducting a Rule 12(b)(6)-type analysis.  *Pace*, 93 F.4th at 889; *Jack*, 79 F.4th at 555  ("Our review generally mimics the familiar 'Rule 12(b)(6)-type analysis.'" (quoting *Smallwood*, 385 F.3d at 573)); *Hicks*, 12 F.4th at 515; *McDonal*, 408 F.3d at 183 n.6; *see Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 205 (holding that the court must apply the federal, not a state, pleading standard when testing for improper joinder); *Afr. Methodist Episcopal Church,* 756 F.3d at 793 ("The federal court's inquiry into the reasonable basis for the plaintiff's state-court recovery is a Rule 12(b)(6)-type analysis.").  If a plaintiff can survive a Rule 12(b)(6)-type challenge, there is generally no improper joinder.  *Hicks*, 12 F.4th at 515 (quoting *Smallwood*, 385 F.3d at 573); *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 208; *Mumfrey*, 719 F.3d at 401.  "Once a court determines that a nondiverse defendant is improperly joined, that party must be dismissed from the case."  *In re N&W Marine Towing, L.L.C.*, 90 F.4th at 731 (noting that "such dismissals must be without prejudice").

D.     Choice of Law

As an initial matter, Defendants contend that the court should apply Michigan law to determine whether Robogistics can establish its fraud-based causes of action against Ulinski, while Robogistics contends that Texas law applies.  In diversity cases, federal courts follow the choice

of law rules of the forum state, here Texas.  *Nix v. Major League Baseball*, 62 F.4th 920, 932 (5th Cir.), *cert. denied*, 144 S. Ct. 165 (2023); *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 n.1 (5th Cir. 2020); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)).

Courts must make an initial determination of whether the agreements at issue contain a choice of law provision and whether that provision should be controlling.  *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).  The Supreme Court of Texas has held that contractual choice-of-law provisions should generally be enforced.  *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990); *see Int'l Ints., L.P. v. Hardy*, 448 F.3d 303, 306-07 (5th Cir. 2006); *Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000).  "The most basic policy of contract law is the protection of the justified expectations of the parties."  *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 419 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 723 (Tex. App.—Houston [1st Dist.] 1992, no writ)); *accord Hoisting Wire Rope & Sling, LLC v. Accu-Tech Comput. Servs.*, No. 2:16-CV-61, 2017 WL 6816502, at *4 (S.D. Tex. Dec. 15, 2017); *DeSantis*, 793 S.W.2d at 677. "The parties' understanding of their respective rights and obligations under the contract depends in part upon how certain they are about how the law will interpret and enforce their agreement." *Chase Manhattan Bank, N.A.*, 835 S.W.2d at 723 (citing *DeSantis*, 793 S.W.2d at 677).  "Judicial respect for their choice promotes the policy of protecting their expectations."  *Id.* (citing *DeSantis*, 793 S.W.2d at 677); *accord Cudd Pressure Control, Inc. v. Sonat Expl. Co.*, 202 S.W.3d 901,

904 (Tex. App.—Texarkana 2006, no pet.); *Mary Kay Inc. v. Woolf*, 146 S.W.3d 813, 816 (Tex.

App.—Dallas 2004, pet. denied).

Next, courts "must determine whether a relevant statute directs the court to apply the laws

of a particular state." *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 340 (Tex.

App.—Houston [14th Dist.] 2004, no pet.); *see Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d

430, 443 (Tex. 2007); *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991);

*see also* RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 ("A court, subject to constitutional

restrictions, will follow a statutory directive of its own state on choice of law.").

If there is a conflict in the law on an issue, absent a choice of law provision or statutory

direction, "Texas courts use the 'most significant relationship' test set forth in the Restatement

(Second) of Conflict of Laws (1971)" to determine the controlling law.  *Mayo*, 354 F.3d at 403

(citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex. 1984)); *accord Hughes

Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000); *Doctor v. Pardue*, 186 S.W.3d

4, 8 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citations omitted); *Reddy Ice Corp.*, 145

S.W.3d at 340 (citations omitted).  Under Texas law, courts examine the following general factors

in deciding which state's law to apply:

    (a)    the needs of the interstate and international systems;
    (b)    the relevant policies of the forum;
    (c)    the relevant policies of other interested states and the relative interests of
        those states in the determination of the particular issue;
    (d)    the protection of justified expectations;
    (e)    the basic policies underlying the particular field of law;
    (f)    certainty, predictability, and uniformity of result; and
    (g)    ease in determination and application of the law to be applied.

*Mayo*, 354 F.3d at 403-04 (quoting Restatement (Second) of Conflict of Laws § 6(2) (1971)).

In the case at bar, the Master Services Agreement ("MSA") between Robogistics and Dematic expressly states, in relevant part:  "This Agreement shall be interpreted and enforced in accordance with the laws of the State of Michigan without regard to the conflicts of law rules of such state" (#12-1).[3]  Ulinski, however, was not a party to that agreement; thus, the provision does not govern Robogistics's claims against him.  *See Mayo*, 354 F.3d at 403; *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 953 (S.D. Tex. 2011) (noting that the choice of law provision did not apply to "the individual defendants because none was a party to the [] Contracts, and, thus, none is subject to the choice-of-law provisions therein").  Moreover, even if Ulinski were bound by the choice of law provision, the MSA's choice of law clause appears limited to the interpretation and enforcement of the contractual agreement and is too narrow to extend to Robogistics's fraud claims.  *See C-Bons Int'l Golf Grp., Inc. v. Lexington Ins. Co.*, No. 3:19-CV-0663-B, 2019 WL 5427574, at *3 (N.D. Tex. Oct. 22, 2019) ("Texas law requires a court to read a choice-of-law provision narrowly."); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) (holding that a provision stating that an "agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, . . . applies only to the interpretation and enforcement of the contractual agreement.  It does not purport to encompass all disputes between the parties or to encompass tort claims."); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir.) (holding that "narrow" contract clause, which stated that the

_____

[3] While not referenced in Robogistics's pleadings, the court finds it appropriate to "pierce the pleadings" and consider the MSA.  *See Jack*, 79 F.4th at 555; *Ticer*, 20 F.4th at 1047.

12

"[a]greement shall be governed by, and construed in accordance with, the internal laws of the State of New York," dealt only with the construction and interpretation of the contract), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003).

Thus, there is no controlling choice of law provision.  In addition, the parties identify no applicable statute directing the court to apply the law of a particular state.  Defendants contend that Texas and Michigan law require similar elements to establish fraud, while Robogistics asserts that Texas law differs substantially from Michigan law in this regard.  Specifically, Robogistics notes that the Texas economic loss rule differs in application from its Michigan counterpart.  Further, Robogistics observes that Texas law, unlike Michigan law, allows an employee of a corporation to be held "liable for tortious acts which he directs or participates in during his employment." Accordingly, the court must examine the relationships of the States of Texas and Michigan to the occurrence and to the parties with regard to Robogistics's claim asserted against Ulinski.

As previously noted, Robogistics is a Texas LLC and has its principal place of business in Texas, while Dematic is a Delaware corporation with its principal place of business in Georgia. Further, Ulinski and Priebe, employees of Dematic, are residents of Texas and New Hampshire, respectively.  Dematic contends that Michigan has a substantial connection to the case, as Dematic's North American operations are based in Grand Rapids, Michigan.  Robogistics claims that the parties negotiated the terms of their agreement in Texas, held multiple meetings in Texas, and that the Gantry System was built in Texas.  In addition, Ulinski, whom Robogistics claims made the misrepresentations, resides in Texas.  Overall, the court finds that Texas has a more substantial relationship to the occurrence and the parties, and, thus, Texas law should control the court's inquiry as to whether Ulinski was properly joined.

13

E.      Fraud Claims

Robogistics alleges causes of action for fraud, fraudulent concealment, and fraudulent inducement as to Ulinski.  Robogistics's petition, under the heading "Introduction," alleges that between 2021 and the end of 2022, during multiple engineering meetings, Ulinski made misrepresentations concerning certain temperature specifications for the project, specifically that the "temperature issues were not the fault of Dematic and instead the fault of Robogistics." Robogistics further alleges that "Dematic and Ulinski wrongfully cast Robogistics as the cause of the Project delay, thereby engaging in a stall tactic to allow Dematic to perpetrate its fraud on Robogistics to claim ownership rights to use the Gantry System (including but not limited to its source code and intellectual property) without paying fully for such ownership and use."

Later in the petition, under "Causes of Action," "Active Fraud, Fraudulent Concealment[,] and Fraud in the Inducement," Robogistics states:  "Dematic, Ulinski and Priebe knowingly omitted material facts and/or provided false and misleading information about its ability to complete and provide software and an operational WCS system, necessary for the operation and completion of the Gantry System."  Thereafter, "Dematic, Ulinski and Priebe made additional representations, and knowingly omitted material facts and/or provided false and misleading information to Robogistics, including but not limited to representations and promises as to Dematic'[s] contractual obligations, which Dematic did not intend to perform or knew at the time it could not perform which it did not disclose to Robogistics."

In their notice of removal, Defendants appear to allege that Robogistics cannot assert a cause of action against Ulinski, in his individual capacity, based on his actions undertaken as an employee of Dematic.  In their response to Robogistics's Motion to Remand, Defendants contend

that Robogistics failed to state a claim against Ulinski as a matter of law, and further, the economic loss doctrine bars recovery for fraud.

        1.    <u>Individual Liability</u>

Under Texas law, a corporate employee may be held individually liable for tortious acts that he directs or in which he personally participates during his employment. *See Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 478 (Tex. 2022), *cert. denied*, 143 S. Ct. 2493 (2023); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984).   This is generally true even where an employee acts within the scope of his employment. *Transcor Astra Grp. S.A.*, 650 S.W.3d at 478 ("But the fact that an individual was acting in a corporate capacity does not prevent the individual from being held personally—or 'individually'—liable for the harm caused by those acts." (citing *Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011); *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002))); *see* RESTATEMENT (THIRD) OF AGENCY § 7.01 (stating that "[a]n agent is subject to liability to a third party harmed by the agent's tortious conduct.  Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment"); *see also Land v. Wal-Mart Stores of Tex., LLC*, No. SA-14-CV-009-XR, 2014 WL 585408, at *3 (W.D. Tex. Feb. 13, 2014) ("There is no reason to believe that . . . employees are somehow immunized for their own torts if they were acting in the scope of their employment."); *Bell v. Wal-Mart*, No. 4:11-CV-576, 2011 WL 5022815, at *3 (N.D. Tex. Oct. 18, 2011); *Carrion v. Ethicon Endo-Surgery, Inc.*, No. C-11-19, 2011 WL 649596, at *4 (S.D. Tex. Feb. 11, 2011).  Thus, Ulinski may be found personally liable for any acts of fraud he committed, even if such actions were within the scope of his employment.

2.       Stating a Claim for Fraud

In Texas, common law fraud may consist of an affirmative misrepresentation or, in certain circumstances, the concealment or non-disclosure of a material fact.  To recover for fraud through affirmative misrepresentation, the plaintiff must establish that:

(1)      the defendant made a material representation concerning an existing fact;

(2)      the representation was false when it was made;

(3)      the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion;

(4)      the speaker made the misrepresentation with the intent that it should be acted upon;

(5)      the plaintiff acted with justifiable reliance on the misrepresentation; and

(6)      the plaintiff suffered injury as a result.

*Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 291 (5th Cir. 2023); *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 218 (5th Cir. 2018); *see Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).  "Fraud is never presumed, and it is plaintiff's burden to allege and prove actionable fraud."  *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 339 (Tex. Civ. App.—Corpus Christi 1979, no writ); *accord Priddy v. Rawson*, 282 S.W.3d 588, 598 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Fraudulent inducement "arises only in the context of a contract and requires the existence of a contract as part of its proof."  *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001); *accord*

16

*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 n.11 (5th Cir. 2021).  Stated differently, "the elements of fraud must be established as they relate to an agreement between the parties." *Haase*, 62 S.W.3d at 798-99; *see Wesdem, L.L.C.*, 70 F.4th at 291 n.4; *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018).

Fraud by nondisclosure, another subtype of fraud, requires that the plaintiff prove:  "(1) the defendant deliberately failed to disclose material facts to the plaintiff that the defendant had a duty to disclose, (2) the defendant knew the plaintiff was ignorant of the facts and that the plaintiff did not have an equal opportunity to discover them, (3) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, and (4) the plaintiff relied on the nondisclosure and suffered injury as a result of that reliance." *Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 801 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *accord CBE Grp., Inc.*, 993 F.3d at 353; *D'Onofrio*, 888 F.3d at 218; *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 862 (Tex. App.—San Antonio 2017, no pet.).

Here, the court cannot conclude that there is no reasonable basis upon which Robogistics may recover from Ulinski.  Robogistics alleges that from 2021 through 2022, Ulinski made material misrepresentations concerning the temperature issues the parties experienced with the project.  According to the petition, the temperature issues arose when Dematic indicated that the robotic system would need to operate at 10 degrees Fahrenheit, only to inform Robogistics after the project was well underway that the system would need to operate at negative 10 degrees Fahrenheit.  Robogistics contends that Ulinski falsely represented that Robogistics was responsible for the miscommunication concerning the operating temperature and resulting issues, making these false representations during multiple meetings.  Under Robogistics's theory of the case, Ulinski

17

made the misrepresentations, knowing that they were false, with the intent to stall the project. This resulted in the parties' making changes to their agreement, requiring Robogistics to make several adjustments to its design and causing a substantial delay of the project, which ultimately, according to Robogistics, provided Defendants with an excuse to terminate the parties' agreement.

With respect to the fraudulent inducement claim, Defendants assert that Ulinski could not have induced Robogistics to enter into the parties' agreement because Dematic hired Ulinski in September 2020, after the parties entered into the MSA on September 13, 2019. Robogistics, however, contends that it submitted a new proposal in December 2020 based on the materially changed conditions and that Dematic accepted the new proposal on February 10, 2021. According to the facts as presented by Robogistics, therefore, Ulinski potentially had input into the negotiations from December 2020 to February 2021.

Accordingly, the court finds that Defendants have failed to demonstrate that there is no possibility that Robogistics could establish its claims of fraud, fraudulent concealment, and fraudulent inducement against Ulinski. Therefore, it must be determined whether the economic loss rule precludes Robogistics's potential recovery against Ulinski.

### 3. Economic Loss Doctrine

Defendants argue that the economic loss doctrine bars Robogistics from asserting its fraud causes of action, as these claims arise from an alleged breach of contract.

In Texas, the economic loss rule "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citing *LAN/STV v. Martin K. Eby Constr. Co.*, 435

S.W.3d 234, 242 (Tex. 2014)); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *Fuller v. Le Brun*, 616 S.W.3d 31, 44 (Tex. App.—Houston [1st Dist.] 2020). "In determining whether a claim can be brought as a tort, consideration must be given to 'the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.'" *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)); *Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 517 n.21 (N.D. Tex. 2019) (quoting *Chapman Custom Homes, Inc.*, 445 S.W.3d at 718)), *aff'd*, 954 F.3d 804 (5th Cir. 2020); *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 227 (Tex. 2022). "Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 142-43 (Tex. 2012) (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)); *accord Pease v. State Farm Lloyds*, 441 F. Supp. 3d 461, 465 (W.D. Tex. 2020). That is, "a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *LAN/STV*, 435 S.W.3d at 242 n.35 (quoting *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012)); *see Glob. Hunter, LLC v. Des Moines Flying Serv., Inc.*, No. 1:18-CV-062-C, 2019 WL 7757888, at *2 (N.D. Tex. June 18, 2019); *Strobach v. WesTex Cmty. Credit Union*, 621 S.W. 3d 856, 878 (Tex. App.—El Paso, no pet.).

In *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, the Texas Supreme Court created an exception to the economic loss rule, holding that tort damages are recoverable for certain fraud claims even where the injury asserted is purely an economic loss.

19

960 S.W.2d 41, 47 (Tex. 1998); *W. Loop Hosp., LLC v. Hous. Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 488 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).  Specifically, the Court differentiated between the duty to "abstain from inducing another to enter a contract through the use of fraudulent misrepresentations" and the duties "established by the contract itself." *Formosa Plastics Corp. USA*, 960 S.W.2d at 46.  Ultimately, the Court concluded that "if a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort." *Id*. at 47.

Here, Robogistics's causes of action against Ulinski include a claim for fraudulent inducement, which falls within the *Formosa Plastics Corp. USA* exception and is not barred by the economic loss rule.  As the court need only find the possibility that Robogistics can state a single claim under state law against Ulinski, it need not consider whether Robogistics's claims of fraud and fraudulent concealment are barred by the economic loss rule.  This is not a case where "there [is] no possibility of recovery because of a legal bar to recovery or because the elements of the claim [are] plainly not satisfied." *Hicks*, 12 F.4th at 516 (citing *Allen*, 907 F.3d at 183-84). Likewise, this is not a case where the petition is entirely devoid of specific allegations about Ulinski's allegedly fraudulent conduct.  *Cf. Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 209; *Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175, 181 (5th Cir. 2012) ("[T]he only allegations in the complaint concerning fraud stated that 'the defendants negligently, gross [sic] negligently, and fraudulently misrepresented and made omissions to the public, including the plaintiffs, about the safety and maneuverability of the 2006 Chevrolet HHR automobile.'").

It has been firmly established by the Fifth Circuit that fraudulent joinder cannot be found if "there is any possibility that the plaintiff has stated a cause of action against any non-diverse

defendant." *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751; *see Melder v. Allstate Corp.*, 404 F.3d 328, 330 (5th Cir. 2005); *Smallwood*, 385 F.3d at 573; *Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir. 2000).   In this instance, while Robogistics's ability to recover is not certain, the court is unable to conclude that Robogistics cannot possibly prevail against Ulinski for his alleged fraudulent inducement.   Hence, "[t]aking [Robogistics's] allegations in this case to be true, [the court] cannot predict with absolute certainty that a Texas court would summarily dismiss the causes of action asserted against [Ulinski]."   *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 554 (5th Cir. 1981).

III.   Conclusion

        Taking all allegations set forth as true and taking all inferences in a light most favorable to Robogistics, the petition at least raises the possibility that Robogistics could succeed in establishing a claim of fraudulent inducement against Ulinski that would not be barred by the economic loss doctrine under Texas law.   Accordingly, Ulinski's citizenship cannot be ignored for the purposes of determining subject matter jurisdiction.   His presence in this civil action means that there is not the complete diversity of citizenship necessary to maintain federal jurisdiction over this case.   Thus, Robogistics's Motion to Remand Removed Action (#10) is GRANTED.

        SIGNED at Beaumont, Texas, this 4th day of June, 2024.


                                        _Marcia A. Crone_
                                        _____
                                        MARCIA A. CRONE
                                        UNITED STATES DISTRICT JUDGE